J. Weller Co. v. Columbia Conserve Co.

DEDUCTIONS IN GOODS SOLD, NOT CONTEMPLATED BY CONTRACT OF SALE, MAY JUSTIFY A REPUDIATION OF CONTRACT BY SELLER.

> If merchandise is sold on contract whereby it is to be measured at point of shipment, such provision is a condition precedent, and if deductions are made from the invoice price by the buyer for shrinkage as shown by measurements at some other place, such deductions may justify the seller to repudiate the whole contract when the shrinkage is only such as might be expected from the nature of the commodity.

ERROR to Hamilton common pleas court.

**Phares, Gusweiler & Phares,** for plaintiff in error.

**Paxton, Warrington & Seasongood,** for defendant in error.

GIFFEN, J.

This action is based upon an alleged breach of a contract of sale of 600 barrels of catsup at 16½ cents per gallon f. o. b. cars Cincinnati, terms—cash ten days, less 1½ per cent. Delivery to be made 75 barrels at a time, as follows: October 1, 8, 15, 22, 29 and November 5, 12 and 19, 1906. Barrels to be tightly coopered, and to be correctly gauged, and goods to be billed at net measurement. The failure to deliver the balance of the installments after delivery of the first two, constitutes the alleged breach of the contract.

The plaintiff, the Columbia Conserve Company, also avers full performance on its part. The defense is an alleged breach by the

Weller Co. v. Conserve Co.

plaintiff in making payment long after the ten days from shipment, in deducting 1½ per cent, and in deducting as shortage 199 gallons on the first car and 220 gallons on the second car.

Plaintiff, by reply, admits delay in payment a few days beyond the period of ten days and deduction of 1½ per cent, but avers that the delays were with the consent of the defendant. It is nowhere averred, however, that the defendant consented to or waived the alleged breach in deducting 419 gallons from the amount billed. Upon the question of waiver the court charged the jury as follows:

"If the defendant waived all breaches of the material items and provisions of this contract committed by the plaintiff, then the defendant had no right to rescind the contract and refuse to carry out its part thereof, and by so doing rendered itself liable to respond in damages to the plaintiff."

No waiver was pleaded to the most important breach by the defendant, and hence it was error to give this instruction. *Eureka Fire & M. Ins. Co.* v. *Baldwin*, 62 Ohio St. 368 [57 N. E. Rep. 57].

The following special instruction was given to the jury before argument at the request of plaintiff:

"If you find from the evidence that the plaintiff made certain deductions from the amount of the defendant's invoice on account of a claim of deficiency in the amount actually delivered you are not to take such deductions as a breach of contract sufficient to justify a rescission by the defendant, unless the deductions so made were made in such a way as to evince a renunciation of the contract by the plaintiff and a refusal to abide by its terms."

In view of the evidence that the measurement was made and deficiency ascertained by the plaintiff at Indianapolis where the cars were unloaded, the words "actually delivered" contained in this instruction would naturally lead the jury to believe that delivery was to be made at Indianapolis, although the court after argument instructed the jury in the general charge that the contract required delivery at Cincinnati, the place of shipment, and they might well find that the measurement thus made was correct, and therefore the deductions thus made did not evince a renunciation of the contract by the plaintiff.

Assuming that the question was one to be submitted to the jury, there was left to the jury too much room for speculation as to what way of making deductions would evince a renunciation of the contract. If the conduct of the plaintiff in measuring the catsup at Indianapolis instead of Cincinnati, and deducting in accordance with measurement

regardless of what loss occurred between such points, showed an intention on the part of plaintiff to treat subsequent shipments in the same manner, it evinced a plain renunciation of the contract in one of its important elements, which justified a rescission by the defendant.

The same objection may be urged to special instruction No. 6 which, after quoting the terms of sale, time of deliveries and manner of gauging and billing goods, reads as follows:

"Before the seller under the contract is entitled to discontinue shipments and claim a cancellation by reason of an alleged breach on the part of the buyer, there must have been such breach on the buyer's part as evinced an intention not to be bound by the contract as a whole."

Just what particular breach or number of breaches would evince such intention the court does not say, although it does say in conclusion of this instruction:

"The mere fact that the discount was deducted after ten days had elapsed was not such a breach of the contract of sale as would warrant the defendant in refusing to continue deliveries."

The provision of the contract that the gauge or measurement of the catsup should be made at the place of shipment is a material incident amounting to a condition precedent to any shipment, and if the plaintiff refused to be bound by this condition the defendant was justified in repudiating the whole contract.

This principle is announced in the case of *Norrington* v. *Wright,* 115 U. S. 188 [6 Sup. Ct. Rep. 12; 29 L. Ed. 366]:

"In a mercantile contract, a statement descriptive of the subject-matter or of some material incident, such as the time or place of shipment, is ordinarily to be regarded as a warranty or condition precedent, upon the failure or nonperformance of which the party aggrieved may repudiate the whole contract."

The retention by the plaintiff of the 1½ per cent discount does not come within the rule, although we do not question the decision of *Contractors & Builders' Supply Co.* v. *Cement Co.* 26 O. C. C. 49 (4 N. S. 225), upon the facts there disclosed. We are of opinion therefore that these two instructions were misleading and prejudicial. The question whether the barrels should be filled, measured and bunged up while the catsup is hot or after cooling was fairly presented by special instruction No. 5 requested by the defendant, and there being no like instruction in the general charge it was error to refuse it.

The plaintiff gives no good reason for delaying payment several

Weller Co. v. Conserve Co.

days beyond the ten days allowed, and the fact that its own measure-
ment of the catsup at Indianapolis shows an outage of precisely two
gallons in every barrel of the 177 shipped except four is convincing
proof that the barrels were full when bunged up, and that the two
gallons outage represents the shrinkage in cooling.

The testimony fairly shows that it was customary and necessary
to run the catsup into the barrels and close the same while hot. It
was impliedly contemplated therefore by the parties that the shrinkage
should be borne by the purchaser. It follows that the verdict was not
sustained by sufficient evidence.

Judgment reversed and cause remanded for a new trial.

**Swing** and **Smith, JJ.,** concur.